IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PATRICIA ANN FRALICK AS          §
EXECUTRIX OF THE ESTATE OF       §
FRED FULTON FRALICK,             §
                                 §
      Plaintiff-                 §
      counterdefendant,          §
                                 § Civil Action No. 3:09-CV-0752-D
VS.                              §
                                 §
PLUMBERS AND PIPEFITTERS         §
NATIONAL PENSION FUND,           §
                                 §
      Defendant-                 §
      counterplaintiff.          §

MEMORANDUM OPINION
AND ORDER

Following the court's decision granting plaintiff-counterdefendant Fred Fulton Fralick ("Fralick") relief in this ERISA[1] action against defendant-counterplaintiff Plumbers and Pipefitters National Pension Fund (the "Fund") under ERISA § 502, Fralick[2] applies for an award of attorney's fees. For the reasons that follow, the court grants the application to the extent of awarding the sum of $53,123.00 for the services of two attorneys and a paralegal.

---

[1]Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

[2]Fralick died while this motion was pending, and the court deferred a ruling on the motion until his executrix, Patricia Ann Fralick, was substituted in his place. For ease of reference, the court will refer to the plaintiff-counterdefendant as "Fralick."

I

In the court's prior memorandum opinion and order, it held that Fralick is entitled to retirement benefits and cessation of the Fund's efforts to collect sums previously paid to him. *See Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, 2010 WL 2563429, at *22 (N.D. Tex. June 22, 2010) (Fitzwater, C.J.). The court also concluded that the Fund's trustees abused their discretion in denying Fralick plan benefits. *Id.* at *19. Fralick moves for an award of attorney's fees under ERISA § 502(g).

Fralick requests attorney's fees totaling $114,475.00 for the services of attorneys James M. Klancnik, Esquire ("Klancnik") and David S. Jones, Esquire ("D. Jones"), and for the paralegal services of Brian C. Jones ("B. Jones"). Klancnik has been a practicing attorney since 1967 and currently maintains his own private practice, primarily involving employee benefits and executive compensation matters. According to Klancnik's declaration, he handled the pleadings, discovery, and pretrial motions related to this litigation. Fralick seeks compensation for Klancnik's 177.75 hours of recorded legal work, at the rate of $350.00 per hour, for a total of $62,212.50. D. Jones is a solo practitioner who has handled employment and labor law matters since 1976. According to D. Jones's declaration, he researched, drafted, consulted, and filed litigation documents and served as the "litigation point person" and "lead attorney" for notification

purposes.  For D. Jones's legal services, reportedly amounting to 133.75 hours at the rate of $350.00 per hour, Fralick requests $46,812.50.  B. Jones worked for his father, D. Jones, as a legal assistant in this case.  According to D. Jones's declaration, B. Jones provided research, drafting, and cite-checking assistance. Fralick requests fees for 54.5 hours of work performed by B. Jones, at the hourly rate of $100.00, for a total of $5,450.00.

The parties do not contest whether Fralick is entitled to attorney's fees or that $350.00 per hour is a reasonable rate for an attorney of Klancnik's or D. Jones's experience.[3]  And neither side requests an upward or downward adjustment to a properly computed lodestar.  Instead, the parties dispute whether all the time for which Fralick is seeking fees was adequately documented and reasonably incurred.

The Fund maintains that Klancnik's invoices include hours that are unproductive, excessive, or redundant.  It specifically cites

---

[3]The Fund concedes that $350 is a reasonable hourly rate for attorney services.  It does not appear to question that $100.00 is a reasonable hourly rate for the paralegal services of B. Jones, and it offers no evidence that this rate is excessive.  The Fund contends in a footnote that the same reasons for supporting a reduction of hours also justify reducing the rate, but it focuses its arguments on adjusting the number of hours in the lodestar calculation.  It may be that the Fund has chosen not to contest the $100 hourly rate because it is arguing that B. Jones's hours should be entirely disallowed based on insufficient records.  Regardless, the court finds this rate to be reasonable for someone of B. Jones's education and experience.  *See, e.g.*, *EsNtion Records, Inc. v. TritonTM, Inc.*, 2010 WL 3446910, at *3 (N.D. Tex. Aug. 31, 2010) (Lindsay, J.) (accepting $125 an hour rate for paralegal without further discussion where parties did not dispute rate).

the number of hours that Klancnik spent on clerical work, the complaint, the motion to compel, and the motion for judgment on the pleadings.  The Fund also argues that Klancnik engaged in "block billing" and that he did not sufficiently itemize the time expended on specific tasks, so that it is impossible to determine whether the time actually spent on each task was reasonable.  The Fund posits that some entries are too vague and that Klancnik's time entries are not sufficiently specific, using 15-minute increments instead of smaller units.  The Fund also argues that the court should reduce the hours included in Klancnik's fee request by 45% to account for unproductive hours, block billing, and vague entries, make deductions for clerical work and excessive time spent on pleadings and pretrial motions, and award fees for only 63.02 of the 177.75 requested hours.

The Fund challenges D. Jones's time entries for similar reasons.  It alleges that none of D. Jones's entries gives a contemporaneous account of the amount of time expended.  The Fund contends that D. Jones's invoice relies on "terse and vague" descriptions of tasks performed, and it merely provides a lump sum of all the time he spent on the case over a 17-month period, without specifying the time he devoted to particular tasks.  The Fund argues that the court should entirely reject such "block billing" because it cannot evaluate the reasonableness of the 133.75 claimed hours.  The Fund challenges B. Jones's invoice for

- 4 -

similar reasons, noting that his entries are identical to his father's on the days he reported work. The Fund maintains that the court should disallow the entire fee requested for D. Jones's and B. Jones's services.

Fralick responds that the Fund's arguments are misplaced, and he submits supplemental documents that provide more specific accounts of the time expended on each task.

II

ERISA § 502, 29 U.S.C. § 1132(g)(1), permits the court, in its discretion, to award a reasonable attorney's fee to either party in an ERISA action. *See, e.g., Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1016 (5th Cir. 1992). The court applies a two-step analysis when awarding attorney's fees: "The court must first determine whether the party is entitled to attorneys' fees by applying the five factors enumerated in *Bowen*. If the court concludes that the party is entitled to attorneys['] fees, it must then apply the lodestar calculation to determine the amount to be awarded." *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1459 (5th Cir. 1995); *see Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 833 (5th Cir. 1996) (holding that district court abused its discretion by failing to discuss *Bowen* factors and lodestar calculation method in determining attorney's fees).[4] A court may

---

[4]The *Bowen* factors are:

(1) the degree of the opposing parties'

- 5 -

award attorney's fees if an administrator abused its discretion in denying benefits. *See Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 302 (5th Cir. 1999) (en banc).

After determining whether attorney's fees are warranted, the court calculates how much it should award, using the lodestar method. Under this method, the court determines the "reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys, and then multipl[ies] the two figures together to arrive at the 'lodestar.'" *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995); *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996)). After determining the lodestar amount, the court may adjust the figure upward or downward after assessing the twelve *Johnson* factors:

_____

> culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980). "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g)." *Id*.

- 6 -

> (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable;" (11) the type of attorney-client relationship and whether that relationship was long-standing; and (12) awards made in similar cases.

*Wegner*, 129 F.3d at 822 n.17 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).[5]

### III

Because the Fund does not challenge Fralick's entitlement to attorney's fees under the *Bowen* factors, the court will not discuss its assessment of these factors at length and will instead turn to a determination of the lodestar.[6]

_____

[5]The Supreme Court has subsequently "barred any use" of the sixth *Johnson* factor. *See Rutherford v. Harris Cnty.*, 197 F.3d 173, 193 (5th Cir. 1999) (citing *Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996)).

[6]"It is an abuse of discretion for a district court to assess attorneys' fees without considering the factors announced in [*Bowen*]." *Lemon v. Liberty Life Assur. Co.*, 304 Fed. Appx. 273, 275 (5th Cir. 2008) (per curiam). The Fund offers no evidence to counter Fralick's discussion of the *Bowen* factors, and it does not appear to contest that Fralick is entitled to attorney's fees. *Cf. Baptist Mem'l Hosp.-DeSoto, Inc. v. Crain Auto. Inc.*, 392 F.3d 288, 299 (5th Cir. 2010) (upholding award of attorney's fees where district court considered *Bowen* factors and defendant denied claim without any supporting evidence). The court has considered each of the *Bowen* factors in light of the Fund's response and has concluded

As noted, *see supra* note 3, the $350.00 hourly rate for Klancnik and D. Jones and the $100 hourly rate for B. Jones are not at issue. The court therefore finds that these rates are reasonable, and it proceeds to analyze the hours claimed. *See Islamic Ctr. of Miss., Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989) ("When th[e] rate is not contested, it is *prima facie* reasonable."); *Cookston v. Freeman, Inc.*, 1999 WL 714760, at *1 (N.D. Tex. Sept. 14, 1999) (Fitzwater, J.) (applying uncontested rate, except where adjusted for clerical work).

The party seeking fees bears the burden of proving that the hours claimed were reasonably expended on the litigation, and he can meet this burden only by presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement. *See Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990) (applying Supreme Court's placement of burden of proof on fee applicant in civil rights context to other contexts as "instructive") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1982)); *see also Kellstrom*, 50 F.3d at 324 (quoting *Hensley*, 461 U.S. at 437) (stating that fee applicant should "'maintain billing time records in a manner that will enable a reviewing court to identify distinct claims'").

---

that attorney's fees should be awarded.

IV

The court turns first to the fees requested for the services of Klancnik.  The Fund requests four categories of deductions: a 15% reduction for lack of billing judgment, a 10% reduction for block billing, a 20% reduction for vagueness, and itemized reductions for excess hours spent on "clerical work," the complaint, the motion to compel, and the Fed. R. Civ. P. 12(c) motion.

A

The Fund argues that Klancnik has failed to show evidence of billing judgment.  His invoice contains no indication that any hours of the 177.75 claimed were written off as redundant, unproductive, or excessive.  Klancnik responds that he did exercise billing judgment but that, as a sole practitioner, he had no need to document non-billable hours and he only recorded hours he intended to bill.  In other words, he maintains that he exercised billing judgment contemporaneously, before recording his hours, reporting only time that he determined was productive, necessary, and not redundant.

The court finds that a percentage reduction is necessary to reflect the lack of evidence of the exercise of billing judgment. A fee applicant must prove that he exercised billing judgment.  *See Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996).  "Billing judgment requires documentation of the hours

charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006); *see Walker*, 99 F.3d at 769 n.9 (quoting *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990)) (recommending that fee applications document "not only hours claimed, but also hours written off"); *Leroy v. City of Houston*, 831 F.2d 576, 585 & n.15 (5th Cir. 1987) (holding that district court erred in accepting faulty records with no reduction of hours and disapproving billing records that were "completely devoid of any hours written off"). The Fifth Circuit has repeatedly determined that bald assertions regarding the exercise of billing judgment are insufficient. *See, e.g.*, *Saizan*, 448 F.3d at 800 (concluding that fee applicant's arguments for neglecting to list unbilled time were "unconvincing[]" and upholding reductions for lack of billing judgment); *Hopwood v. Texas*, 236 F.3d 256, 279 (5th Cir. 2000) (upholding reductions for lack of billing judgment where there was evidence of inadequate time entries and duplicative work product, and finding that lead attorney's affidavit that he exercised billing judgment, without more, did not demonstrate abuse of discretion).

Because Klancnik's declaration says nothing about exercising billing judgment, he does not explain what efforts he undertook to exclude redundant, unproductive, or excessive time. He avers that he "personally *spent* 177.75 hours on this matter." D. App. 2

(emphasis added).  This appears to contradict the assertion, first made in Fralick's reply brief, that the 177.75 hours represent the total hours *after* Klancnik exercised billing judgment, rather than the total number of hours spent.[7]  *See* P. Reply Br. 4 (alleging that there is no evidence of deductions made because Klancnik does not record unproductive time or excessive time in his time records in the first place).  Furthermore, "[s]tatements by counsel in briefs are not evidence."  *Skyline Corp. v. NLRB*, 613 F.2d 1328, 1337 (5th Cir. 1980).

Having found that Fralick has failed to produce sufficient evidence that Klancnik exercised billing judgment, the court reduces Klancnik's overall fee request by 10%.  Although there have been instances, as the Fund notes, where this court has imposed a greater percentage reduction based on lack of billing judgment, *see, e.g.*, *Cookston*, 1999 WL 714760, at *5 (reducing fee request by 15% for lack of billing judgment), the court is making other, task-specific reductions below for excessive hours.  *See infra* § IV(D).

---

[7]Moreover, the hours for which Klancnik seeks compensation call into question whether Klancnik adequately understands the concept of billing judgment.  *See Walker*, 99 F.3d at 770.  While the fee applicants in *Walker* at least attempted to deduct some time for matters not ultimately pursued or for non-legal expenses, Klancnik has failed to do even this, as evidenced by his inclusion of such minuscule tasks as a voicemail regarding a formatting correction, organizing files, faxing, and service of process, and by the high number of hours reported for tasks such as drafting the complaint and preparing/re-preparing exhibits (especially when viewed in light of the allegedly non-redundant hours spent by D. Jones and B. Jones on the same documents).  *See infra* § IV(D)(2).

The court finds that the combination of these task-specific reductions in § IV(D) and the percentage reduction imposed here sufficiently accounts for excessive, unproductive, and redundant time.

B

The Fund requests that the court reduce Klancnik's fees by 10% for block billing. It points out that Klancnik reports all of the tasks performed on a given day in a single entry, stating the daily total hours spent rather than specifying the time spent per task. The Fund argues that, as a result of block billing, it is impossible to tell whether the 15 entries of communication with co-counsel in January 2010 or the time billed for travel to and from court on October 28, 2009 was reasonable. Klancnik responds that the Fifth Circuit permits compensation for travel time at attorney billing rates to account for the attorney's opportunity cost in forgoing other legal work. *Cf. In re Babcock & Wilcox Co.*, 526 F.3d 824, 828-29 (5th Cir. 2008) (noting that courts have broad discretion to award travel time, such that while some courts compensate travel at full rate, it was not abuse of discretion to reduce award by half). And he posits that he is justified under the work product doctrine in not explaining the nature of his 15 entries for communications. Klancnik also contends that his record-keeping cannot be characterized as block billing.

The term "block billing" refers to the "'time-keeping method

by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Glass v. United States*, 335 F.Supp.2d 736, 739 (N.D. Tex. 2004) (Lindsay, J.) (citing *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1534 n.15 (10th Cir. 1996)); *accord Barrow v. Greenville Indep. Sch. Dist.*, 2005 U.S. Dist. LEXIS 34557, at *10 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.) (citing *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998)), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007). Klancnik engaged in block billing. He may have itemized his *tasks* to a certain extent, providing some detail as to the various types of work performed on a particular day, but he did not itemize his *time* on a per-task basis.

Because Klancnik engaged in block billing, the court must next decide whether this warrants a percentage reduction in Fralick's fee request. A reduction for block billing is not automatic. "Courts disfavor the practice of block billing because it impairs the required reasonableness evaluation. When time records are block billed, the court cannot accurately determine the number of hours spent on any particular task, and the court is thus hindered in determining whether the hours billed are reasonable." *Barrow*, 2005 U.S. Dist. LEXIS 34557, at *11. But "even a failure to provide contemporaneous billing statements does not preclude an award of fees per se, as long as the evidence produced is adequate

to determine reasonable hours." *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 n.18 (5th Cir. 2000) (quoting *Kellstrom*, 50 F.3d at 325). Therefore, before reducing the fee request based on block billing, the court must evaluate whether the applicant's evidence is adequate to enable it to determine the reasonableness of the hours expended.

The court finds that Klancnik's practice of block billing has impeded its ability to determine the reasonableness of his request. Klancnik's billing statement contains no more than one entry per day, and it often groups several tasks under one entry. On some days, Klancnik's billing practice is sufficient because he only performed one task on that day related to this case. *See, e.g.*, D. App. 4 (time entry reflecting that Klancnik expended 2.5 hours on 1/28/09 preparing exhibits to complaint and did nothing else on this case); *id.* at 5 (showing that Klancnik served the Secretary of Labor and Secretary of Treasury by certified mail over the course of .75 hours on 5/15/09, and did nothing else); *id.* at 6 (reporting on 9/25/09 that Klancnik spent 3.0 hours outlining the Rule 12(c) motion and performed no other work related to this lawsuit). For such entries, the task would have a one-to-one correspondence with the number of hours reported for that day.

For many other entries, however, there are several tasks reported on a particular day, and the time reported for the day reflects the total time for all work performed. *See, e.g.*, *id.* at

7 (reporting 2.75 hours for a single entry on 10/28/09 for "Hearing before Judge Ramirez; conf. with DJones and RHopp place tel. calls to DJones and Sam Zurik, III; tel. conf. with Bob Lombardi; travel to and from court"); id. at 8 (reporting 5.25 hours for a single entry on 1/4/10 for "Tel Conf. with DJonesmotion to strike; revising motion to strike or exclude evidence; outlining response to motion for summary judgment").  Although some block-billed entries contain sufficient information to enable the court to assess the reasonableness of the time expended,[8] too many entries lump together tasks in such a way that it is impossible to tell whether, for any particular task, the number of hours spent and claimed was reasonable.

For example, Klancnik reported his longest blocks of hours on 1/20/10 and 1/21/10.  On each day, Klancnik recorded 5.50 hours for drafting a reply, or reply brief, on the Rule 12(c) motion, teleconferencing with D. Jones, and "researching." Id. at 8.  The court cannot determine from such entries how much time was spent simply conferring about the Rule 12(c) motion or other matters, as opposed to drafting and researching the motion.   It is

_____

[8]For example, the court could decide that Klancnik's 6/19/09 entry, which reports a total of .25 hours for "Tel. conf. DJones re discovery; returning client's call," D. App. 5, is reasonable, even if the court cannot determine precisely what part was spent conferring with D. Jones or Fralick, respectively, or knowing the precise content of the conversations.   The court could conclude that spending a total of 15 minutes on a particular day responding to a client and consulting with co-counsel about discovery matters is reasonable.

- 15 -

conceivable——even if unlikely——that Klancnik spent 4.50 hours each day conferring with co-counsel about the motion, and expended only a modest amount of time each day on drafting and research.   The point is that the court cannot how much time was spent on each task due to the use of block billing.[9]

Given that some challenged entries are not block billed[10] and that the block-billed entries have fewer tasks per day or shorter time increments per entry than some of the more egregious examples of block billing found in various cases,[11] the court concludes that a 10% deduction is sufficient.

_____

[9]Klancnik's arguments regarding the work product doctrine and the compensability of travel time are misplaced.   Even assuming, for example, that travel time is compensable, block billing impedes the court's ability to determine whether the portion of the total that comes from travel time is reasonable.   And, as discussed above, there are other examples of how block billing has hindered Klancnik's ability to demonstrate the reasonableness of reported hours.

Nor does the work product doctrine excuse the failure to carry the burden of proof of reasonableness.   Klancnik could have done what fee applicants often do: present additional details *in camera* that explain the services rendered.

[10]Of 139 entries, about 85 appear to be block-billed.

[11]*See, e.g.*, *Barrow*, 2005 U.S. Dist. LEXIS 34557, at *11 (illustrating egregiousness of block billing with sample entry containing over 14 tasks, and applying 20% reduction for block billing); *Paris v. Dallas Airmotive, Inc.*, 2004 WL 2100227, at *9, *11 (N.D. Tex. Sept. 21, 2004) (Lindsay, J.) (applying 40% reduction for block billing where entries were month to month). *Cf. Walker*, 99 F.3d at 773 (disallowing entirety of hours claimed by paralegal because she was "always lumping all of the day's activities together").

C

The Fund also requests a 20% deduction for vague entries, and it challenges Klancnik's practice of billing in 15-minute increments and of vague descriptions, such as "phone conference with co-counsel" and "legal research."  The Fund alleges that a 20% deduction is appropriate because about 20% of the entries contain imprecise and vague descriptions.  Klancnik responds that this court has permitted billing in 15-minute increments and that it has long been his practice to bill this way.  Klancnik also cites *Cookston*, 1999 WL 714760, at *3, contending that because this court has previously allowed some recovery for entries that are even more vague than the ones at issue, the court should also allow recovery here.

The use of 15-minute increments is not prohibited *per se*, and the Fifth Circuit has expressly declined to decide whether it is. *See Conoco, Inc. v. Director, Office of Worker's Compensation Programs*, 194 F.3d 684, 692 (5th Cir. 1999) (declining to opine on use of quarter-hour increments, and affirming attorney's fees where quarter-hour increments appeared to represent adequately the work actually performed).  This court has permitted fees based on such increments except where the task performed required so little time that 15 minutes appeared excessive.  *See, e.g.*, *Young v. Sea Horse Venture IV, LLC*, 2009 WL 614823, at *2 (N.D. Tex. Mar. 10, 2009) (Lynn, J.) (finding that some tasks could easily have taken fewer

than 15 minutes and finding risk of overbilling unreasonable for that case); *Sandoval v. Apfel*, 86 F.Supp.2d 601, 615 (N.D. Tex. 2000) (Fitzwater, J.) (concluding that quarter-hour method was not excessive *per se*, but finding that quarter-hour billing was excessive for certain small tasks); *compare Radiant Sys., Inc. v. Am. Scheduling, Inc.*, 2007 WL 582923, at *3 (N.D. Tex. Feb. 23, 2007) (Solis, J.) (reducing a .25-hour entry to a .10-hour entry because it involved a very short task) *with Donihoo v. Dallas Airmotive, Inc.*, 1999 WL 740692, at *3 (N.D. Tex. Sept. 15, 1999) (Solis, J.) (noting that billing in quarter-hour increments is an accepted, if regrettable, local practice and declining to apply "across-the-board" reductions for general excessiveness). The court therefore declines to reduce the fee application based on the use of 15-minute increments generally; instead, it will apply a percentage reduction for vagueness.

Among the entries that reflect quarter-hour billing, several are too vague to determine whether the time expended was reasonable. As with similarly deficient entries in *Cookston*, several of the descriptions provide no explanation of the subject matter of the task or of what was done, thereby preventing the court from determining whether the time was reasonably expended. *See Leroy*, 906 F.2d at 1080 (striking hours where record notations were "not illuminating as to the subject matter" or "vague as to precisely what was done"). Several of the "telephone conference"

entries provide no indication of the purpose of the communication.
*Compare* D. App. 8 (listing several descriptions stating, "Tel.
confs. with DJones," without describing subject matter) *with id.* at
7 (providing adequate description of subject matter in an 11/6/09
conference by explaining, "Tel. conf. with RHopp re joint status
report").   Many entries that list "research" tasks provide
inadequate descriptions of subject matter, as well.   *Compare id.*
(listing vague descriptions such as "researching cases" and
"researching") *with id.* at 4 (giving sufficient description of
subject matter by explaining, "Researching Mello case" or
"Researching suspension of benefits").   Some reduction of the time
requested in these entries is necessary to account for vague
descriptions of communications and research-related entries and the
inability to determine whether those billed in 15-minute increments
were reasonable.[12]

Klancnik maintains that the time entries for "research" and
for telephone conferencing that state no more than "tel. conf." and
the names of the people participating are allowable under *Cookston*.
The court disagrees.   The court did not "allow" such entries in
full in *Cookston*.   The communication entries in *Cookston* were
vague (e.g., "Telephone call to Cookston," "Telephone call from

---

[12]The Fund appears to concede that the remainder of the entries
(i.e., all entries other than those designating "tel. conf." and
"research" without subject matter descriptions) are not vague. *See*
D. App. 11-16.

Sherry," "Message Cookston").  But rather than disallow the entire amount, the court applied reductions to permit a reasonably expected number of hours for conferring with co-counsel and the client during that stage of the litigation.  *See Cookston*, 1999 WL 714760, at *3 (adjusting entries with vague entries to 0.25 hours, but keeping intact entries that specified subject matter to justify time spent, such as "Telephone call to James re: discovery").  As the court explained in *Cookston*, it "denie[d] or reduce[d] [attorney's] fees for all entries except those that specifically refer[red] to the complaint, discovery following the filing of the complaint, and judicial proceedings." *Id*.  Likewise, in this case, the court applies a reduction to reflect the number of descriptions that merely state "tel. conf." or "conf.," without specifically referring somewhere in the entry to a court document, proceeding, or some other indication of subject matter.[13]  There are about 28 descriptions involving correspondence that do not specify subject matter within the same entry.  The entries containing these descriptions involve a total of 8.5 hours.  There are 0 descriptions of research where the subject matter of the research is not at least suggested elsewhere in the entry.  There are

---

[13]Although the court applied task-specific reductions in *Cookston* where all of the tasks in the block-billed entry involved short tasks, the court takes an overall percentage reduction approach in the instant case because Klancnik's block-billed entries group tasks of varying time commitments together, making task-specific reductions infeasible.

approximately 166 descriptions involving correspondence in total (regardless whether they specify subject matter), and the entries containing such descriptions total about 133.5 hours.  In addition, there are stand-alone entries for "organizing files, and "organizing research," for 1.0 and .50 hours, respectively, that the court finds vague.  There are about 243 descriptions of tasks in total, for 177.25 total hours claimed for Klancnik.  Based on the number of vague descriptions and the inability to determine whether billing by the quarter-hour is reasonable, the court applies a 10% reduction.

D

The court now considers whether specific reductions are necessary for excessive time spent on clerical work and drafting the complaint, the motion to compel, and the Rule 12(c) motion.

1

The Fund alleges that Klancnik has billed for clerical work such as preparing exhibits, serving and filing proofs of service, organizing files, faxing drafts, telephone conferences with an assistant, organizing research, telephone conferences with chambers regarding status, and emailing comments to co-counsel about the court's opinion.  It is especially notable that Klancnik billed 3.75 hours solely for preparing, assembling, and redacting exhibits

to the complaint.[14]

Klancnik offers three reasons for billing this time at attorney rates: assembling exhibits to the complaint required care because Fralick intended to file a motion for judgment on the pleadings; the exhibits were "replete with complete social security numbers," and "care had to be taken to redact the social security numbers"; and, "[a]s a solo practitioner with no secretarial employee, some tasks just fell to Klancnik." P. Reply 6-7. Although Klancnik maintains that the time spent on exhibits should be allowed in full at attorney rates, he does not appear to question the premise that serving and filing proofs of service, organizing files, faxing drafts, telephone conferences with an assistant, organizing research, telephone conferences with chambers regarding status, and emailing comments to co-counsel about the court's opinion should in the context of this case be considered clerical.

The court finds that Fralick is not entitled to recover fees at an attorney's rate for the clerical work in question. Even assuming that Klancnik took special care in collecting the exhibits because he anticipated filing a Rule 12(c) motion, he has failed to explain how preparing, assembling, and redacting these documents required the services of an attorney. It is not evident from the

---

[14]Additionally, there is one hour of block billing that contains the description "assembling exhibits" along with other non-clerical tasks. D. App. 4 (describing 2/25/09 entry).

record what "prepar[ation]" was done to the exhibits other than affixing labels and redacting Fralick's social security number, union membership number, and home address.   Although an attorney can render professional services in a manner that is not apparent from the court's independent review of a pleading, there are indications in the record that Klancnik, a solo practitioner who lacked support staff, was performing clerical work.   One time entry states that he spent 1.0 hour "[r]edacting and preparing exhibits [to] complaint, notice etc."   D. App. 4 (4/16/2009 entry).   And while handling personal information may require care, one need not be a lawyer to review documents for the presence of social security numbers and home addresses.   This is the type of work that a professional clerical assistant can perform.

Klancnik also asserts generally that it was necessary that he perform clerical tasks himself because he is a sole practitioner. But under *Johnson* and its progeny, this court must distinguish between "legal work, in the strict sense," and clerical work "that a lawyer may do because he has no other help available."   *See Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 535 (5th Cir. 1986) (citing *Johnson*, 488 F.2d at 717); *see Johnson*, 488 F.2d at 717 ("Such non-legal work may command a lesser rate.   Its dollar value is not enhanced just because a lawyer does it.").

Accordingly, the court finds that the following 7.0 hours expended for clerical work should be compensated at the reduced

hourly rate of $100: 1/28/09 (2.5 hours); 1/29/09 (.25 hours); 4/16/09 (1.0 hour); 4/24/09 (1.0 hour of 1.5 claimed); 5/15/09 (0.75 hours); 5/19/09 (0.5 hours); and 6/1/09 (1.0 hour).

2

The Fund alleges that the sum of 25.25 hours claimed for the drafting of the complaint is excessive.  It contends that, of the 59 paragraphs in the complaint, 40 are simply factual descriptions of documents and events and that the elements of the causes of action stated in the remaining paragraphs are not complicated and novel.  Klancnik responds that pure notice pleadings are no longer sufficient under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009), and that care was required in drafting the complaint so that the suit could  withstand a motion for more definite statement.

The court finds that the sum of 25.25 hours expended in drafting of the complaint is excessive.  It is not apparent that *Twombly* and *Iqbal* made it particularly difficult to draft the complaint in this case given the nature of Fralick's suit. Moreover, D. Jones seeks compensation for 7.0 hours of work on the complaint, meaning that Fralick's attorneys are seeking 32.25 hours of supposedly non-redundant work (i.e., the equivalent of more than four days of eight billable hours per day of work).  The court finds that a total of 15 hours is reasonable for Klancnik's work in preparing the complaint.

3

The Fund argues that the 7.13 hours requested[15] for preparing the motion to compel should be reduced to 3.0 hours based on the fact that the 1½ page motion cites only the leading case on the issue of attorney-client privilege in the way of legal analysis and that the motion was denied.  The court notes that some of the hours counted toward the Fund's total were not related to *drafting* the motion to compel (i.e., the 10/28/09 entry for the hearing on the motion to compel, which the Fund counted as 1.3 hours toward the motion to compel, and the 12/30/09 entry on "Tel. confs. with DJones and RHopp; tel. conf. with DJones re motion to strike evidence," which the Fund counts as .25 hours toward the motion to compel).  D. App. 13-14.  Disregarding these hours that do not appear to have been spent on the motion to compel, Klancnik would have claimed 5.58 hours by the Fund's count.  D. Jones also requests compensation for an additional 1.75 hours, and B. Jones spent an additional 0.5 hours,[16] amounting to a total of 7.83 hours

_____

[15]The Fund calculates this number by adding up all of the entries that mention the motion to compel, plus some time spent on the hearing itself, and erroneously includes a "motion to strike evidence."  D. App. 11, 13.  On days where there are tasks unrelated to the motion to compel that are block-billed with tasks related to it, the Fund appears to have multiplied the number of hours reported for the day by the fraction of the total number of tasks that involved work on the motion to compel, with the exception of the hearing on 10/28/09, which the Fund assigns the value of 1.3 hours.  *See id.* at 13.

[16]This follows the Fund's methodology of taking the total number of hours claimed and scaling the figure based on the

to write and brief the motion to compel.  The court finds this to be excessive given the limited content of the motion and brief.  The court finds that 3.0 hours were reasonably expended by Klancnik.

4

The Fund maintains that Klancnik billed 56.48 hours for drafting the Rule 12(c) motion and reply.  It alleges that the motion and reply were of poor quality and failed to analyze any authority beyond the leading cases, and it requests the court award only 40 hours.  Fralick responds that the Rule 12(c) motion was complicated by the Fund's attempts to introduce material facts not in the administrative record.

Given the nature of the motion and the issues presented, the court cannot say that Klancnik's fee request is excessive of itself.  But because D. Jones seeks compensation for an additional 9.25 hours, and B. Jones an additional 12 hours, for work on the Rule 12(c) motion (for a total of 77.73 allegedly non-redundant hours devoted to the 12(c) motion), the court will address below whether their requests should be reduced.

5

As explained in § IV(D)(1)-(4), the court awards 7.0 hours at the rate of $100 per hour, versus $350 per hour, for a reduction of $1,750.00; reduces 25.25 hours for drafting the complaint to 15

proportion of tasks during the day spent on the motion to compel.

hours, for a reduction of 10.25 hours; and reduces 5.58 hours to 3.0 hours for drafting the motion to compel, for a reduction of 2.58 hours.  In order to facilitate the computation of reductions in § IV(E), the court converts the $1,750.00 rate reduction to its hourly equivalent of 5 hours (i.e., 1,750.00 ÷ 350 = 5).  The total reduction is therefore 17.83 hours.

E

In sum, the court finds that Klancnik did not exercise billing judgment, that he block-billed in a manner that affected the court's ability to assess the reasonableness of the fees requested, that some of the descriptions are too vague as to the nature of the task or that 15-minute increments are excessive, and that certain work performed is clerical or unreasonable given the nature of the service.  The court subtracts 17.83 specific hours, leaving a balance of 159.92 hours.  The court next applies a total percentage reduction of 30% from the remaining amount that Klancnik has requested (159.92 - 47.98 = 111.94).[17]  Multiplying the result of

---

[17]Fralick criticizes the methodology followed by various courts in the Fifth Circuit that determines the percentage reduction appropriate for each deficiency (e.g., 15% for vague entries and 10% for block-billing) and adds the reductions together to determine a total reduction to apply to the hours claimed (e.g., applying a 25% total reduction).  *See, e.g.*, *Abner v. Kan. City S. Ry. Co.*, 541 F.3d 372, 377-78 (5th Cir. 2008); *Tyler v. Union Oil Co.*, 304 F.3d 379, 390 (5th Cir. 2002); *Barrow*, 2005 U.S. Dist. LEXIS 34557, at *59.  He requests that the court consider an alternate method that applies one percentage reduction after the other (e.g., applying a 15% reduction, and then applying a 10% reduction to the result, yielding a total reduction of 23.5%).  Although this is a reasonable approach, the court will not deviate

- 27 -

111.94 hours times $350.00 per hour, the court finds that the sum of $39,179.00 is reasonable for Klancnik's services.

V

The court now considers the fees requested for D. Jones.

A

D. Jones's initial submission only listed his time expenditures in increments that spanned at least one entire day and sometimes up to several months. He reported only the total number of hours claimed for the lawsuit, without specifying a per-activity accounting of his time. In reply to the Fund's opposition response, D. Jones submitted a revised claim that reported the number of hours expended each day and added several notes that highlighted where hours had been deducted for duplicative work. D. Jones maintains that his record-keeping was contemporaneous with the work reported and that his earlier submission omitted a daily accounting for the court's convenience.

B

First, the Fund objects to D. Jones's fee request on the ground that he is relying on "terse and vague" descriptions of the services rendered. The Fund cites entries such as "telephone calls or conferences," "emails,", and "research and evidence gathering," contending they are too general to demonstrate that the time

---

from the method followed by courts that have applied percentage reductions, because that method is also reasonable as well.

expended was reasonable.  The court holds that D. Jones has not met his burden of demonstrating the reasonableness of these hours.  The entry dated "6/20/09-9/5/09" contains a possible explanation that the "Research and Evidence Gathering" was for "Our Discovery/Their Discovery," but the entry itself is still impermissibly vague because it is grouped with a task described as "Correspondence (63 emails sent/received and 42 telephone calls/conferences)."  *See Walker*, 99 F.3d at 773 (finding "woefully inadequate" terse listings such as "library research," "analyzing documents," and "phone interviews").  Bare descriptions, without any reference to content or purpose, do not demonstrate that the services were necessary and that the amount of time expended was reasonable. "The district court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *Kellstrom*, 50 F.3d at 326.  Given that the entries describing correspondence are "not illuminating as to the subject matter" and nearly all of the entries listing document work are "vague as to precisely what was done,"[18] *see id*. (designating entries with such deficiencies as sufficiently vague to merit reduction or

---

[18]D. Jones includes one footnote at the beginning of the statement of services rendered that declares that each entry that lists a document name should be presumed to signify "research, consulting, drafting, and filing."  P. Reply App. 3.  This is insufficient.  Not only are some of the tasks listed in the footnote vague, this method of record-keeping introduces inaccuracies and is itself a form of block billing (i.e., reporting only the total time for multiple tasks, rather than itemizing time spent on each task).

elimination of hours), the court applies a 20% reduction.

C

Second, the Fund challenges D. Jones's use of block billing. The Fund cites as especially deficient the entries describing time spent on telephone calls and emails. Instead of describing the purpose and time spent on each, D. Jones includes a single entry for all email and telephone communication that occurred over periods spanning several months. *See, e.g.*, D. App. 20 (reporting the dates "1/21/09-4/30/09" and describing the services as 25 emails and 16 calls for "Research and consulting," and reporting entries for "correspondence" dated "5/1/09-6/16/09" and "6/20/09-9/5/09" and listing total number of emails and calls exchanged over period); *id.* at 21 (reporting entry date as "12/28/09" but covering span of 10/12/09-12/28/09, and giving total of 151 emails and 83 calls exchanged); *id.* at 22 (reporting entry dated 6/28/10 but explaining that total of 87 emails and 38 calls and conferences were made between 2/20/10-6/28/10). In response, D. Jones submitted a revised statement listing the number of hours spent on the case each day, but declined to parse the email/correspondence entries into individual entries. D. Jones posits that contemporaneous records exist for the block-billed correspondence entries, but that he chose to submit only a summary because he did not want to inconvenience the court with the production of hundreds of pages of email and telephone records. He also argues that there

was "good reason" for the lumped records, pointing to the fact that he employed a legal assistant who was studying abroad and "often unavailable," and the fact that Klancnik, his co-counsel, had no reliable email or cell phone until recently.

The court is not persuaded by this reasoning. Problems of distance or of co-counsel's lack of reliable communication devices do not excuse a fee applicant from providing specific, contemporaneous descriptions of the nature of emails and telephone calls. D. Jones need not have produced a voluminous record; it would have been sufficient to provide details of the purpose or nature of each communication and of the time expended so that the court could determine the reasonableness of the hours claimed. *See Kellstrom*, 50 F.3d at 325. D. Jones's correspondence entries, spanning months of discussion on unspecified subject matter, fail to provide any indication of the reasonableness of distinct claims.

Nevertheless, the court will not entirely reject D. Jones's application. Although some of the entries are block-billed (the correspondence entries are the most egregious examples), others provide sufficient explanation of the nature of the activities and of the time spent on a given task to enable the court to evaluate the reasonableness of the time claimed. *See, e.g.*, P. Reply App. 4 (noting, in an 11/10/09 entry, 6.0 hours for the "Deposition of Freddy Fralick," and nothing more for the day). Furthermore, most courts that have addressed block billing have concluded that

denying all block-billed attorney's fees is not appropriate. *See Bramlett v. Med. Protective Co.*, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010) (Fitzwater, C.J.) (recounting cases that have addressed block billing and applied percentage reductions, typically in the range of 10 to 30 percent, rather than disallowing fees entirely). Considering how other courts have addressed attorney's fees requests under analogous circumstances, the court finds that a 25% reduction is warranted.

D

Third, the Fund argues that there is no evidence that D. Jones exercised billing judgment by documenting unproductive, excessive, or redundant hours. In the billing statement that D. Jones submitted initially, he only mentioned "[n]ine hours administrative time not included in invoice total hours." D. App. 20. In response to the Fund's opposition based on lack of billing judgment, D. Jones submitted a revised supplemental statement that added to four entries an asterisked note on the number of hours excluded for duplicative work. The administrative time subtracted is not evidence of billing judgment, however, because D. Jones should not have included these hours anyway. But the asterisked notes indicating time subtracted for redundant work do provide some evidence of D. Jones's efforts to exclude redundant hours. Accordingly, the court will not reduce the fee request on this ground.

E

Fourth, the Fund maintains that the hours claimed are excessive, given that D. Jones was working on the same matters as Klancnik, and, according to the Fund, Klancnik's time expenditures were themselves excessive.  In Fralick's reply brief, Klancnik and D. Jones acknowledge that Klancnik was "the primary draftsman of all pleadings and other documents leading up to the Court's Judgment."  P. Reply 4.  Furthermore, the brief alleges that "Klancnik did not repeat any tasks already completed by [D.] Jones."  *Id.*  Yet a comparison of Klancnik's hours with D. Jones's reveals a number of duplications.  *Compare* D. App. 4 (claiming 25.25 hours for preparation of complaint) *with* P. Reply App. 3 (claiming 7.0 hours for preparation of complaint, with no reductions for duplicative work); *compare, e.g.,* D. App. 5 (claiming 4.0 hours for preparation of answer) *with* P. Reply App. 4 (claiming 3.5 hours for preparation of answer); *compare* D. App. 6 (claiming 7.0 hours for preparing motion to compel) *with* P. Reply App. 4 (claiming in a block-billed entry containing three other tasks 7.0 hours for preparing motion to compel, with a reduction of 2.0 hours for duplicative work).

Fralick has failed to show that the time expended by D. Jones on the complaint, the motion to compel, and the motion for judgment on the pleadings——i.e., the items specifically challenged as excessive in Klancnik's billing——was not redundant and excessive.

Accordingly, the court reduces 7.0 hours from D. Jones's time for the complaint, 1.75 hours for the motion to compel, and 9.25 hours for the Rule 12(c) motion, for a total reduction of 18 hours.

The court is also unable to determine whether any of D. Jones's work was redundant generally. Although D. Jones has shown that he exercised some billing judgment, the court cannot determine from the record whether these reductions are adequate. D. Jones's vague descriptions of services rendered, often stating no more than the name of the motion, do not indicate why a second lawyer was necessary for the legal service provided. For example, it is unclear why it was reasonable for D. Jones to bill an additional 1.5 hours at attorney rates to file a certificate of interested persons on 4/27/09, when Klancnik had already "reviewed and signed" the certificate on 4/16/09. And in this case, the certificate should have been relatively simple to prepare. It is also doubtful that it was reasonable for D. Jones to expend 7.0 hours on 4/24/09 to prepare the complaint when co-counsel had already "assembled exhibits" and "proof[ed]," "complet[ed] and sign[ed]," and "redact[ed]," and "prepar[ed] exhibits" a second time by 4/16/09. Given that Klancnik reported filing the complaint on 4/24/09 (requesting 1.5 hours at attorney billing rates for doing so), it is unclear why it was necessary for D. Jones to devote another 7.0 hours on that same date (i.e., on the date of filing), and D.

Jones's statement of services rendered provides no explanation.[19] In fact, throughout the statement of services, D. Jones's entries state no more than the names of documents, and the explanatory footnote at the beginning of the statement merely advises the court to construe all such entries to mean "research, consulting, drafting, and filing" of the named document.  The court concludes from this that D. Jones has failed to demonstrate that his reported hours were reasonable.  The court cannot determine from the names of documents and the general description of "research, consulting, drafting, and filing" the nature of the services D. Jones rendered and whether they were duplicative of Klancnik's work as primary draftsman.

"The court should exclude all time that is excessive, duplicative, or inadequately documented."  *See Jimenez v. Wood Cnty.*, 621 F.3d 372, 379-80 (5th Cir. 2010) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)).  "'It is impermissible, however, to eliminate wholesale the services of attorneys without identifying the particular services which are regarded as duplicative.'"  *Tasby v. Estes*, 651 F.2d 287, 289-90 (5th Cir. Unit A July 1981) (quoting *Northcross v. Bd. of Educ.*, 611 F.2d 624, 637

---

[19]It is possible, of course, that this results from totaling the number of hours spent on the complaint and reporting all such hours on the date the complaint was filed.  It is also conceivable that D. Jones was mistaken about the date when he performed the work.  Regardless, such inaccurate record-keeping does not support awarding fees for this service.

(6th Cir. 1979) (agreeing with Sixth Circuit's observation)). Nevertheless, as noted in *Tasby*, in certain factual settings, "the use of a number of attorneys frequently results in some duplication of effort, and a district court may take this factor into account by deducting some small percentage of the total hours." *Id.* at 289 & n.1 (cautioning that panel does not require a "small" percentage as a rule and explicitly permitting district court to adjust percentage where duplication of effort is "not small"). As applied to D. Jones, the case law counsels against disallowing the entirety of his claimed fees, even though his records effectively prevent the court from reliably determining which particular hours were duplicative. Given that D. Jones's statement lists many of the same documents claimed by Klancnik, however, *see* D. App. 4-9; P. Reply App. 3-5 (listing in common the complaint, certificate of interested parties, Rule 12(c) motion and reply, answer to counterclaim, discovery responses, motion for protective order, motion to compel, motion to strike, motion to exclude evidence and reply, response to motion for summary judgment), and applying Fifth Circuit precedent that the number of attorneys frequently results in some duplication of effort, the court concludes that a percentage reduction of 30%.

F

The court finds that D. Jones's time should be reduced for the reasons explained. Starting from the total of 133.75 claimed

hours, the court subtracts 18.0 hours for time expended regarding the complaint, the motion to compel, and the Rule 12(c) motion. To this net figure of 115.75 hours, it applies a 20% reduction for vague descriptions, a 25% reduction for block billing, and a 30% reduction for inadequate documentation to account for the possibility of duplicative work not reflected in the records, resulting in 28.94 compensable hours (115.75 - 86.81 = 28.94 hours) and a fee award of $10,129.00 for D. Jones.

VI

Finally, the court considers the fee request of paralegal B. Jones.

A

On the dates when B. Jones's billing statement reflects an entry, each contains a description of services that is essentially identical to the one reflected in D. Jones's records for that day. In response to the Fund's opposition response that B. Jones's records are merely a "cut and paste" of D. Jones's records, Fralick submits a more detailed statement that reflects that the hours claimed for B. Jones are different from those claimed for D. Jones and that deductions had been made for duplicative research work. Also, whereas D. Jones's footnote alleges that every document listed under "services rendered" represents "research, consulting, drafting, and filing," B. Jones's footnote states that all entries under services rendered involved "research, citation-checking, and

drafting." *Compare* P. Reply App. 3 *with id.* at 7.  Fralick justifies the similarity between D. Jones's and B. Jones's records on the ground that, as D. Jones's paralegal, B. Jones worked on the same matters on the same day as did D. Jones.  Fralick argues that allowing B. Jones and/or D. Jones to cut and paste one another's entries was "computer savvy" and "probably saved time" for both. P. Reply 6.

B

The court finds that Fralick has failed to demonstrate that some of the time claimed by B. Jones was reasonably expended. Because the descriptions in each of B. Jones's entries are merely copies of D. Jones's descriptions, the records of both suffer from the same deficiencies.  Moreover, the cut-and-paste method used here exacerbates the deficiencies by introducing potential inaccuracies through the non-contemporaneous copying of entries made by another, and by facilitating the use of generic descriptions that do not distinguish between the distinct contributions of each person.

For the same reasons set out in § V regarding D. Jones, the court concludes that it should reduce rather than deny compensation for the services claimed by B. Jones.  As with D. Jones's records, B. Jones's time records are unduly vague, block billed, and duplicative.  The court will therefore make percentage reductions from the total hours claimed.  The court does not find that the

*paralegal* services of B. Jones are redundant of the *legal* services that Klancnik expended on the complaint, the motion to compel, or the motion for judgment of pleadings.  It will therefore make no reductions for work B. Jones performed for these services. Additionally, the court will make lower percentage reductions than it did for D. Jones because, for example, many more of B. Jones's entries involve one document per day, and B. Jones's entries do not contain large blocks of time spanning months for correspondence tasks.  And there is less risk that his paralegal services are duplicative of the work performed by Fralick's lawyers.

Accordingly, starting from the total of 54.5 hours claimed, the court applies a 10% reduction for vague descriptions,[20] a 10% reduction for block billing, and a 10% reduction for inadequate documentation to account for the possibility of duplicative work not reflected in the records, resulting in 38.15 compensable hours (54.5 - 16.35 = 38.15 hours).  Multiplied by the hourly rate of $100, this results in a fee award of $3,815.00 for the paralegal services of B. Jones.  The court finds some evidence of billing judgment, as documented by the reductions in B. Jones's revised statement, and applies no reduction for lack of billing judgment.

---

[20]As discussed above, the mere listing of names of documents and a blanket after-the-fact declaration that every entry reported involved "research," "citation-checking," and "drafting" is inadequate to apprise the court of the reasonableness of hours claimed for each task and the precise nature of the tasks done on a particular day.

VII

Given that the lodestar analysis already reflects considerations raised by many of the *Johnson* factors, *see Perdue v. Kenny A.*, ___ U.S. ___, 130 S.Ct. 1662, 1673 (2010), that a court must be careful not to double-count a *Johnson* factor already reflected in the lodestar calculation, *see Shipes v. Trinity Industries*, 987 F.2d 311, 320 (5th Cir. 1993), and that neither party seeks an adjustment to the lodestar under *Johnson*, *see* D. Resp. Br. 12; P. Reply Br. 8, the court finds that the fee award should be based on the lodestar amount alone.

\*     \*     \*

In summary, the court awards attorney's fees in the sum of $39,256.00 for Klancnik and the sum of $10,129.00 for D. Jones, and paralegal fees in the sum of $3,815.00 for B. Jones, for a total award of $53,200.00. Fralick shall recover this award from the Fund.

**SO ORDERED.**

February 11, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE